UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDDIE LEE JAMES,

        Petitioner,

                                     CASE NO. 15-12902

v.

                                     HONORABLE JOHN CORBETT O'MEARA

DEWAYNE BURTON,

        Respondent.

_____/

### OPINION AND ORDER
### GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT [8],
### DISMISSING THE HABEAS CORPUS PETITION [1],
### DENYING A CERTIFICATE OF APPEALABILITY,
### AND GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

      This matter has come before the Court on a *pro se* habeas corpus petition under

28 U.S.C. § 2254.  Petitioner Eddie Lee James ("Petitioner") challenges his convictions

for one count of second-degree murder, Mich. Comp. Laws § 750.317, four counts of

felonious assault, Mich. Comp. Laws § 750.82, and one count of possessing a firearm

during the commission of a felony ("felony firearm"), Mich. Comp. Laws § 750.227b.

Respondent Dewayne Burton ("Respondent") has moved for summary judgment and

dismissal of the habeas petition on the basis that Petitioner did not comply with the one-

year statute of limitations.  The Court agrees that the habeas petition is time-barred, and

because there is no credible basis for tolling the limitations period or for excusing the

late filing, the Court will grant Respondent's motion and dismiss the habeas petition.  A

procedural history and analysis follow.

## I.  Background

Petitioner was charged in Wayne County, Michigan with one count of first-degree
(premeditated) murder, Mich. Comp. Laws § 750.316, one count of conspiracy to
commit first-degree murder, Mich. Comp. Laws § 750.157a, four counts of assault with
intent to commit murder, Mich. Comp. Laws § 750.83, and one count of felony firearm,
Mich. Comp. Laws § 750.227b.  The state court briefly summarized the facts leading to
these charges as follows:

> This case arises out of the fatal shooting of 11-year-old James White.
> There was a history of continuing arguments between defendant's family
> and members of the White family, and defendant and his brother had
> driven past the victim's home shooting guns in the air.  On August 19,
> 1996, defendant, his brother, and two others ran through a field, shooting
> at Joseph White (the deceased's uncle) and three friends who were sitting
> on a porch.  After the incident, James White was found fatally wounded in
> front of his house.  Another victim, who was 15 years old, was wounded in
> the leg.

*People v. James*, No. 282280, 2009 WL 1139314, at *1 (Mich. Ct. App. Apr. 28, 2009).

Petitioner was tried in 1997 with a co-defendant in the former Recorder's Court
for the City of Detroit.  Although the co-defendant chose to have a jury trial, Petitioner
opted to have the trial judge decide his case.  At the conclusion of the joint trial, the trial
judge acquitted Petitioner of the conspiracy count, but found him guilty of second-
degree murder, Mich. Comp. Laws § 750.317, four counts of felonious assault, Mich.
Comp. Laws § 750.82, and one count of felony firearm, Mich. Comp. Laws § 750.227b.
On September 19, 1997, the trial court sentenced Petitioner to two years in prison for
the felony-firearm conviction, followed by concurrent terms of seventy to one hundred
fifty years in prison for the murder conviction and two to four years for the felonious
assault convictions.

Petitioner appealed as of right, claiming that the evidence at trial was insufficient to support his murder conviction and that the trial court erred by failing to provide reasons for exceeding the sentencing guidelines for the murder conviction.  The Michigan Court of Appeals affirmed Petitioner's convictions, but remanded his case so that the trial court could articulate its reasons for exceeding the sentencing guidelines for the murder conviction.  *See People v. James*, No. 236046, 2003 WL 462580 (Mich. Ct. App. Feb. 21, 2003).  Petitioner subsequently raised his sufficiency-of-the-evidence claim in the Michigan Supreme Court, which denied leave to appeal on August 29, 2003.  *See People v. James*, 469 Mich. 878; 668 N.W.2d 908 (2003).

On or about June 21, 2004, Petitioner filed a motion for relief from judgment in which he claimed that (1) trial counsel was ineffective for failing to secure the presence of police inspector Joan Ghougoian, (2) the trial court erred by reviewing the preliminary examination transcript before placing it in evidence, (3) his trial attorney acquiesced in the prosecutor's suppression or withdrawal of exculpatory evidence, and (4) appellate counsel was ineffective for failing to raise these issues on appeal.  In a supplemental brief, Petitioner argued that the admission in evidence of his non-testifying co-defendant's custodial statement violated his right of confrontation.  The state trial court found no merit in Petitioner's claims and denied Petitioner's motion, stating that Petitioner had failed to show good cause or prejudice under Michigan Court Rule 6.508(D)(3).  *See People v. James*, No. 96-06986 (Wayne Cty. Cir. Ct. June 10, 2005). The Michigan Court of Appeals dismissed Petitioner's subsequent application for leave to appeal without prejudice because Petitioner failed to pay the filing fee in a timely manner.  *See People v. James*, No. 264066 (Mich. Ct. App. Dec. 9, 2005).  Petitioner

did not appeal that ruling to the Michigan Supreme Court.  *See* Larry Royster's affidavit, ECF No. 9-30.

In 2007, the trial court's successor addressed the sentencing issue that the Michigan Court of Appeals previously remanded to the court.  The court articulated reasons for exceeding the sentencing guidelines and then re-sentenced Petitioner to the same sentence of seventy to one hundred fifty years for the murder conviction.  (10/1/07 Resentencing Tr. at 14-15.)  The court sentenced Petitioner to time served for the remaining convictions.  *See* Judgment of Sentence dated October 1, 2007, ECF No. 9-35 at 4.)

Petitioner appealed the sentence imposed on remand, but the Michigan Court of Appeals affirmed the sentence.  *See People v. James*, No. 282280, 2009 WL 1139314 (Mich. Ct. App. Apr. 28, 2009).  And on October 26, 2009, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues.  *See People v. James*, 485 Mich. 927; 773 N.W.2d 678 (2009).

On or about July 30, 2013, Petitioner raised his habeas claims in a second motion for relief from judgment.  He alleged that he had newly discovered impeachment evidence which established his innocence and demonstrated that the prosecution's witness committed perjury and that a fraud was committed on the court.  The "newly discovered impeachment evidence" was Myron Jackson's affidavit, which states that, on August 19, 1996, he was in the process of selling a gun to Petitioner near a house on Harmon Street in Detroit when he and Petitioner heard gunshots.  The trial court found the affidavit unpersuasive and denied Petitioner's motion pursuant to Michigan Court

4

Rules 6.502(G) and 6.508(D)(3).  *See People v. James*, No. 96-06986 (Wayne Cty. Cir. Ct. Jan. 23, 2014).

Petitioner appealed the trial court's decision, but the Michigan Court of Appeals dismissed his appeal for lack of jurisdiction.  The Court of Appeals stated that  Petitioner had "failed to present newly discovered evidence supporting his successive motion for relief from judgment as provided by MCR 6.502(G)(2)" and that Petitioner could not "appeal the denial of a successive motion for relief from judgment."  *People v. James*, No. 322128 (Mich. Ct. App. Aug. 22, 2014).  On May 28, 2015, the Michigan Supreme Court denied leave to appeal because Petitioner failed to establish entitlement to relief under Michigan Court Rule 6.508(D).  *See People v. James*, 497 Mich. 1027; 863 N.W.2d 306 (2015).

On August 2, 2015, Petitioner signed and dated his habeas petition, and on August 13, 2015, the Clerk of the Court filed the petition.  Petitioner alleges that newly discovered impeachment evidence (1) establishes his innocence, (2) demonstrates that a prosecution witness committed perjury, and (3) demonstrates that a fraud was perpetrated on the court.[1]  Respondent argues in his pending motion for summary judgment and dismissal of the petition that Petitioner's claims are barred from review on the merits because Petitioner failed to comply with the statute of limitations.

---

[1]  After Petitioner filed his habeas corpus petition, he filed a motion to correct his sentence in the state trial court.  The trial court denied his motion, *see People v. James*, No. 96-006986-01 (Wayne Cty. Cir. Ct. Nov. 9, 2015), and the Michigan Court of Appeals denied leave to appeal the trial court's decision, *see People v. James*, No. 331262 (Mich. Ct. App. June 2, 2016).  The matter is pending in the Michigan Supreme Court.  *See People v. James*, No. 154110 (Mich. Sup. Ct. July 18, 2016)

## II. Analysis

The Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  This rule applies to habeas corpus proceedings. *Harris v. Stegall*, 157 F. Supp.2d 743, 746 (E.D. Mich. 2001).  The moving party bears the responsibility for "identifying those parts of the record that demonstrate the absence of any genuine issue of material fact."  *Modowan v. Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "To defeat a motion for summary judgment, the non-moving party must set forth specific facts sufficient to show that a reasonable factfinder could return a verdict in his favor."  *Sanders v. Freeman*, 221 F.3d 846, 851 (6th Cir. 2000).

### A. The Statute of Limitations

The basis for Respondent's motion is the statute of limitations set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  AEDPA established a one-year period of limitation for a state prisoner to file a federal habeas corpus petition. *Wall v. Kholi*, 562 U.S. 545, 550 (2011) (citing 28 U.S.C. § 2244(d)(1)); *Holbrook v. Curtin*, __ F.3d __, __, No. 14-1247, 2016 WL 4271875, at *2 (6th Cir. Aug. 15, 2016) (citing § 2244(d)(1)).  The limitations period runs from the latest of following four dates:

> **(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> **(B)** the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> **(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized

by the Supreme Court and made retroactively applicable to cases on collateral review; or

　　　**(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).  "AEDPA also contains a tolling provision, which specifies that 'the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.' " *Holbrook*, 2016 WL 4271875, at *2 (quoting 28 U.S.C. § 2244(d)(2)).

　　**B. Application**

　　Although Petitioner was convicted and sentenced in 1997, he was re-sentenced in 2007, and when a state appellate court remands a case for re-sentencing, a judgment becomes final after re-sentencing and the conclusion of direct review of the new sentence.  *Rashad v. Lafler*, 675 F.3d 564, 567-69 (6th Cir. 2012).  Petitioner was re-sentenced on October 1, 2007, and on October 26, 2009, the Michigan Supreme Court denied Petitioner's application for leave to appeal his new sentence.  Petitioner then had ninety days to apply for a writ of certiorari in the United States Supreme Court under Supreme Court Rule 13.1.  Because he did apply for a writ of certiorari, direct review of his conviction and new sentence came to a conclusion on January 24, 2010, ninety days after the Michigan Supreme Court denied leave to appeal the re-sentencing.  *See Gonzalez v. Thaler*, 132 S. Ct. 641, 653-54 (2012) (explaining that, for petitioners who do not pursue direct review all the way to the United States Supreme Court, "the judgment becomes final at the 'expiration of the time for seeking such review'—when the time for pursuing direct review in [the Supreme] Court, or in state court, expires").

The statute of limitations began to run on the day after Petitioner's convictions and new sentence became final, *see Miller v. Collins*, 305 F.3d 491, 495 n.4 (6th Cir. 2002), and it ran uninterrupted for one year, expiring on January 24, 2011. Although Petitioner filed a motion for relief from judgment in July of 2013, the motion did not revive the limitations period, nor restart the limitations clock at zero. *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (quoting *Rashid v. Khulmann*, 991 F. Supp. 254, 259 (S.D. N.Y. 1998)). Petitioner filed his habeas petition in August of 2015.

### C. Statutory Tolling under 28 U.S.C. § 2244(d)(1)(D)

Petitioner acknowledges that his habeas petition is untimely. He nevertheless appears to argue in favor of a delayed start to the limitations period for "newly discovered evidence" consisting of Myron Jackson's affidavit and the results of ballistic tests that the Detroit Police Department performed on his gun.

Under 28 U.S.C. § 2244(d)(1)(D), the limitations period can begin to run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

> The question under this provision is not when prisoners first learned of the new evidence; it is when they should have learned of the new evidence had they exercised reasonable care. Habeas claimants invoking this provision shoulder the burden of proving that they exercised due diligence.

*Townsend v. Lafler*, 99 F. App'x 606, 608 (6th Cir. 2004) (internal citations omitted).

As noted above, Myron Jackson avers in an affidavit dated December 9, 2011, that, on August 19, 1996 – the date that James White was shot and killed – he sold a gun to Petitioner on Harmon Street in Detroit. Jackson also states in his affidavit that he and Petitioner heard gunshots as Petitioner was getting ready to test the gun which Jackson was selling. *See* Pet. for Writ of Habeas Corpus, ECF No. 1, App. A.

Petitioner maintains that Jackson's affidavit is proof he was elsewhere when James White was shot and killed.  However, if Petitioner really was present with Jackson on August 19, 1996, the factual basis for his habeas claims was known to him then.  In fact, he admits in his own affidavit that he and his trial attorney discussed his gun and the fact that he was elsewhere when the crime was committed.  *See* Pet. for Writ of Habeas Corpus, ECF No. 1, App. J.

Petitioner nevertheless asserts that he did not know Jackson at the time of the gun sale, that he knew only Jackson's nickname, and that he (Petitioner) went to jail soon after buying the gun from Jackson.  He claims that he did not know how to secure Jackson's presence at trial or at any time afterward until he met Jackson in prison in 2010.  *See* Pet'r Response to Resp't Mot. Requesting Summary J., ECF No. 10, at 2; *see also* Pet. for Writ of Habeas Corpus, ECF No. 1, App. J (Affidavit of Eddie L. James).

Even if the Court were to assume that the factual basis for Petitioner's claims could not have been discovered until August of 2010 when Petitioner supposedly encountered Jackson in prison and asked him for an affidavit, the habeas petition is still untimely, because Petitioner took no action on his case for over a year after he spoke with Jackson in August of 2010.  He also took no action on his case for more than a year after Jackson signed his affidavit in December of 2011.

As for the ballistics evidence that Petitioner contends is newly discovered, the request for laboratory service on the guns in question was made on August 21, 1996, well before Petitioner's trial in July of 1997.  *See* Pet. for Writ of Habeas Corpus, ECF

No. 1, App. B.  Thus, the results of the tests could have been discovered sooner if Petitioner had acted with due diligence.

To summarize, Petitioner knew of the evidence on which he relies or could have learned of the evidence if he had exercised due diligence.  Thus, he does not qualify for a delayed start to the limitations period.  Furthermore, the habeas claims are time-barred even if the statute of limitations did not begin to run until Petitioner met Jackson in prison in 2010.

### D.  Equitable Tolling

Petitioner seeks equitable tolling of the limitations period, but the Supreme Court has "made clear that a [habeas] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see also Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749-50 (6th Cir. 2011) (adopting *Holland's* two-part test for determining whether a habeas petitioner is entitled to equitable tolling).

Petitioner did not pursue any state or federal remedies for three and a half years after his new sentence became final and for three years after he supposedly met Myron Jackson in prison and asked Jackson whether he remembered selling a gun to him.  Thus, Petitioner has not been diligent in pursuing his rights.  He also has not alleged that some extraordinary circumstance stood in his way of filing a timely habeas petition or a post-conviction motion that would have tolled the limitations period.  The Court therefore declines to equitably toll the limitations period in this case.

### E.  Actual Innocence

Petitioner maintains that prosecution witnesses lied at trial and that he is actually innocent of the crimes for which he is incarcerated.  Actual innocence, if proved, serves as a gateway through which habeas petitioners may pass when the impediment to consideration of the merits of their constitutional claims is expiration of the statute of limitations.  *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013).  The Supreme Court has "caution[ed], however, that tenable actual-innocence gateway pleas are rare:  '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of . . . new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.' "  *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).  "*Schlup* instructs that additional evidence of actual innocence must be both new and reliable before it can be considered."  *Cleveland v. Bradshaw*, 693 F.3d 626, 636 (6th Cir. 2012).

Although the state trial court acquitted Petitioner of conspiracy, it was persuaded by the evidence at trial that,

> on or about August 19, 1996, [Petitioner] and others . . . entered a discussion concerning shooting up the properties owned by the White family located on Brush Street and Harmon Street in the City of Detroit. Later in the evening pursuant to that discussion, they went to the area of Belmont and Brush Streets.  Seated on . . . the porch at 10211 Brush Street were Derrick Sanders, Joseph White, Kylon Stanford and Solomon Grandberry engaged in discussion.  Shooting erupted from persons accompanying Mr. James, resulting in injury to one of the persons seated on the . . . porch, and a bullet striking and killing 11 year-old James White.

(7/23/97 Trial Tr. at 5-6.)  The trial court found the testimony regarding Petitioner's plan to shoot up the White family's property to be credible.  The trial court also determined that Petitioner intended to create a high risk of death or injury.  *Id.* at 6.

11

Myron Jackson's affidavit suggests that Petitioner was elsewhere at the time of the shooting, but Joseph White testified at trial that he knew Petitioner on August 19, 1996, and that Petitioner was one of the men who came running out of a field with a firearm and began shooting at White and his friends that night.  (7/14/97 Trial Tr. at 87-92, 103, 107, 182.)   Paula White testified that she heard the gunshots and then saw four men running through a vacant field toward her home on Belmont Street.  Although the men's backs were turned to her and she could not see their faces, she knew Petitioner for about twenty-nine years, and she recognized his build and short hair (or bald head) from behind.  (*Id.* at 48-49, 57-65, 78-79.)  Ms. White's daughter, LaDonna White, testified that she saw the men's faces and that Petitioner was one of the men she saw running toward her home.  (7/15/97 Trial Tr. at 193-99.)

Petitioner was arrested at his girlfriend Maranda Bell's home.  Sergeant William Petersen testified that he questioned Ms. Bell on August 20, 1996, and that Ms. Bell informed him that Petitioner left the house with a long gun before the shooting.  Ms. Bell also informed Sergeant Petersen that, after the shooting, Petitioner returned to her house and changed his clothes.

Officer Petersen later went to Ms. Bell's house and found a man's black hooded sweatshirt in the second-floor bedroom of Ms. Bell's home.  The sweatshirt was the only large article of clothing in the bedroom, which was used by Ms. Bell's eight-year son, and it was consistent with a description of what the shooter had worn.  (7/21/97 Trial Tr. at 3-9, 21-24.)

Police Officer Monica Childs read co-defendant Anthony Myles' custodial statement into the record.  Myles' statement implicated Petitioner in the shooting, as he

12

stated that Petitioner had a "Mak 90" gun on the night of the shooting and that Petitioner had gone to "John R and Harmon and shot up the White spot." (*Id.* at 53-56.) Given the strength of the foregoing evidence, the Court is not persuaded that, in light of Myron Jackson's affidavit, no reasonable juror would have voted to find Petitioner guilty beyond a reasonable doubt.

There are other reasons why the affidavit is not persuasive. First, it does not state the time of day when Jackson supposedly sold a gun to Petitioner. Consequently, as the state trial court pointed out in one of its orders, even assuming the affidavit is factually accurate, Petitioner still could have committed the crimes for which he is incarcerated.

Second, the affidavit was signed over fifteen years after the shooting. Affidavits collected long after the fact to prove a habeas petitioner's innocence "are to be treated with a fair degree of skepticism." *Herrera v. Collins*, 506 U.S. 390, 423 (1993) (O'Connor, J., concurring). Jackson, moreover, has not explained how he happened to remember the specific day that he sold a gun to Petitioner or the details of his transaction with Petitioner. He also has not offered any explanation for not coming forward sooner to provide an alibi for Petitioner, even though he supposedly knew Petitioner from the neighborhood. And Petitioner has not explained his failure to seek post-conviction relief promptly after Jackson signed his affidavit. "Unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing [of actual innocence]." *McQuiggin*, 133 S. Ct. at 1935.

As for the ballistics evidence, defense counsel stated at Petitioner's initial sentencing that there seemed to be scientific evidence that Petitioner was not on

13

Belmont Street shooting a gun.  (9/19/97 Sentence Tr. at 17.)  Petitioner himself states in his affidavit that he discussed his gun and an alibi defense with his trial attorney. Thus, the ballistics evidence does not appear to be new evidence.

Even if the ballistics reports attached to the habeas petition prove that Petitioner did not kill James White or fire his gun on Belmont Street, one of the prosecutor's theories was that Petitioner aided and abetted his co-defendants by planning the shooting and participating in the assault on the victims.  If an "aider and abettor participates in a crime with knowledge of his principal's intent to kill or to cause great bodily harm, he is acting with 'wanton and willful disregard' sufficient to support a finding of malice . . . ." *People v. Kelly*, 423 Mich. 261, 278–79; 378 N.W.2d 365, 372 (1985). Therefore, the fact that Petitioner may not have fired his gun was inconsequential, and his ballistics evidence does not prove that he is innocent.

Petitioner has not presented the Court with new and reliable evidence of actual innocence.  Therefore, he may not pass through the "actual innocence" gateway and have his claims heard on the merits.

### III.  Conclusion

Petitioner filed his habeas petition after the statute of limitations expired, and he is not entitled to statutory tolling under § 2244(d)(1)(D).  He also is not entitled to equitable tolling of the limitations period, and he has not submitted any new and credible evidence of actual innocence.  Therefore, Respondent is entitled to judgment as a matter of law.  The Court grants Respondent's motion for summary judgment and dismissal of the habeas petition (ECF No. 8) and dismisses the habeas corpus petition (ECF No. 1) as untimely.

**IV.  Denying a Certificate of Appealability;**
**Granting Leave to Proceed *In Forma Pauperis* on Appeal**

Before Petitioner may appeal this Court's decision, a certificate of appealability must issue.  28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When, as here, a district court rejects a habeas petition on procedural grounds without reaching the merits of the petitioner's underlying claims, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Reasonable jurists could not debate whether the Court's procedural ruling is correct or whether the petition states a valid claim of the denial of a constitutional right.  The Court therefore declines to grant a certificate of appealability.   Nevertheless, because Petitioner was granted leave to proceed *in forma pauperis* in this Court, *see* ECF No. 4, he may proceed *in forma pauperis* on appeal.  Fed. R. App. P. 24(a)(3).


Date: August 30, 2016                    s/John Corbett O'Meara
                                         United States District Judge

15